## G. H. WATERMAN & CO., INC. *vs.* DAVID DWARES.

JULY 27, 1942.

PRESENT: Moss, Capotosto, Baker and Condon, JJ.

Moss, J.   This is an action of trover and conversion to recover the value of certain goods which are described in the declaration as ten ball warps of 20/2 cotton yarns belonging to the plaintiff and having a value of $932.96 and which the defendant is alleged to have converted to his own use.  To this declaration the defendant pleaded not guilty.  The case was tried in the superior court before a justice thereof, sitting without a jury; and thereafter he filed a decision for the plaintiff in the amount of $956.28, being $932.96, for the value of the yarns at the time of the conversion, plus interest thereon.

The case is now before us on the defendant's bill of exceptions, setting forth an unnumbered exception to the decision of the trial justice and twenty numbered exceptions to various rulings by him in the course of the trial, nearly all of them being as to the admission of evidence. Of all the exceptions in the bill, only two have been relied upon before us, one being to the final decision of the trial justice and the other being to a refusal by him to grant a motion by the defendant's counsel that the answer of the plaintiff's witness Gibson to question 356 addressed to him be stricken out. We therefore need not consider the defendant's other exceptions. In the decision of the trial justice the following facts were found from undisputed evidence:

In the early fall of 1940 the plaintiff, a Rhode Island corporation, having its principal place of business in the city of Providence, purchased from time to time considerable quantities of cotton yarns from the Habersham Mills, located in Habersham, Georgia, and resold them to the Narragansett Plush Company, Inc., a corporation having its weaving mill in the city of Fall River, Massachusetts, and hereinafter referred to as the Narragansett Company.

These resales were under a standing agreement between the plaintiff and the Narragansett Company, by which it was provided, in substance, that in case of any sale of yarns by the former to the latter, they would be shipped from the producer to the latter, but marked "G. H. Waterman & Company, Incorporated c/o Narragansett Plush Mills" and should technically be in the possession of the plaintiff; and that the latter corporation would not use them until it had paid the plaintiff for them, when title would pass to the latter company.

On September 30 and October 4, 1940 shipments of some of these yarns aggregating 28 ball warps were made by the Habersham Mills to the plaintiff in care of the Narragansett Company and delivered to the latter's mill in Fall River in accordance with the foregoing agreement, title and technical

possession remaining in the plaintiff. The Narragansett Company never paid for them.

On October 26, 1940, becoming alarmed as to the financial condition of the Narragansett Company, Mr. Waterman and Mr. Gibson, two of the officers of the plaintiff, went with a truck to the former company's mill in Fall River, found there eighteen of the ball warps in their original condition, capable of being removed in the truck, and brought them to the plaintiff's place of business in Providence. They found at the mill one other of its ball warps, which had been opened and so loosened that it could not be brought to Providence on the truck.

They also found there eight beams with yarn on them which was the same kind and style as the yarn included in the shipments from Habersham. They could not tell from such examination as they could then make of the yarn on these beams whether it was the plaintiff's yarn, but were told by a man in the employment of the Narragansett Company that it was. However, being on the beams, it was not practicable to bring that yarn to Providence on the truck, and therefore it was left in the Fall River mill.

The defendant at that time was discounting commercial paper for the Narragansett Company. On October 18, 1940 a pledge agreement was made between them by which the latter company pledged to him, as security for such discounts, certain of its assets and goods located in various places, including the premises in Fall River. In the schedule of the assets and goods thus pledged, the company specifically excluded "approximately 30 ball warps, located in said premises at said Fall River, which 30 ball warps are the property of Waterman & Company."

Soon after this pledge agreement was made, a representative of the defendant was placed in the mill of the Narragansett Company to look after the interests of the defendant. He was there on October 18 and 19; and three or four days later he had another man come in and remain at the mill to look after the defendant's interests. The mill ceased

operation about October 30, 1940, and soon afterwards, acting under the pledge agreement between the Narragansett Company and him, the defendant sold and delivered the contents of the mill to the Joan Plush Company.

Later the Narragansett Company went into bankruptcy; and then the plaintiff filed in the bankruptcy proceedings a petition to reclaim the ten ball warps of yarn which had been shipped to the Narragansett Company and never paid for by it or removed by the plaintiff. But it was found that these had not come into the possession of the receiver and the present action was then brought.

By the defendant's own testimony, when he was called as a witness for the plaintiff, it was shown that the bill of sale of November 22, 1940 by him to the Joan Plush Company of personal property in the Narragansett Company's mill, being defendant's exhibit 8, included:

> 42 beams—5 ball warps cotton yarn 12,458 lbs.
> 4 ball warps cotton yarn   ·   1,097   "
> 3 beams yarn      1,067   "
> 6   "    "      714   "

At the end of this bill of sale are these provisions: "This sale is made 'as is' without waranty or guarantee, express or implied, of any kind or nature.

"In the event of failure of title and return of merchandise in good condition by the buyer to the seller, the buyer shall be reimbursed the amount paid hereunder."
The defendant also testified that all the beams in the mill were sent to the Joan Plush Company.

The trial justice found, from the evidence, that title to the yarn in question was not to pass from the plaintiff to the Narragansett Company until it was paid for; that it was never paid for; and that the title never passed to that company but remained in the plaintiff. He found also, from the evidence, that this yarn was not made into cloth by the Narragansett Company; "that it was present in the latter's mill; that it was there when the contents of the mill came

under the supervision of the defendant; and that it was sold by the defendant to Joan Plush Company."

A witness by the name of Wright testified that he had been employed by the Narragansett Company as a "beamer and warp compressor" a very short time before, and continued to be there employed until it went out of business; that it was a part of his duty to run the yarn from a ball warp onto a section beam, from which it would go onto a compressor; and that the yarn is not changed in any way, when it is transferred from a ball warp onto a beam.

He testified also that he was at the mill when the 28 ball warps of the Habersham yarns were received there, being marked "G. H. Waterman, c/o Narragansett, Union Mill number 3, Fall River, Massachusetts"; that he opened up ten of these ball warps, one of which was ripped and was therefore left unwrapped, being apparently the one that was later found by Mr. Gibson, as above stated, to have been opened and so loosened that it could not be brought to Providence on the truck which he and Mr. Waterman had taken there.

Wright further testified to the effect that the yarn from one of the other ball warps was wound onto a section beam which was not transferred to a warp compressing machine or "compressor"; and that the yarns from the other eight ball warps were wound onto section beams which were put into the compressor, to be put onto loom beams. He testified also that that was the situation when he left the mill at the close of the last day of its operation by the Narragansett Company, the Waterman yarns being in the same condition as when they were received at the mill. His testimony was not in any way contradicted or discredited.

A witness by the name of Monks testified that he had been employed as watchman or caretaker of the Narragansett Company property by the defendant, through a witness named Stafford; that he began his duties there a few days before the mill shut down; that it was a part of his duties to see that no goods left the plant, unless the defendant was

there or the witness was ordered by Stafford to allow goods to be taken out; that on all the yarns in the place he put tags showing that they were the property of the defendant; and that all the beams with yarn on them were shipped out by the defendant.

The man who was president and treasurer of the Narragansett Company testified that it did not pay for the 28 ball warps of yarn last shipped to its plant by the Habersham Mills for the plaintiff; that they were at the Narragansett Company's mill when it made the pledge agreement with the defendant; that he told the defendant that this yarn was only on consignment on the Narragansett Company's floor and that the defendant agreed that he would not touch this yarn. This witness also testified that neither he nor anybody else employed by the Narragansett Company removed any of that yarn.

The defendant contends that there was no basis for the fixing of the amount of damages, suffered by the plaintiff, at the figure at which the trial justice fixed them in his decision. This amount was, as above stated, made up of $932.96, as the value of the converted yarns at the time of their conversion, plus interest thereon.

The former of these two amounts, as shown by the evidence, was figured on a price of 24½c per pound for the converted yarn, being the price at which it was sold by the plaintiff to the Narragansett Company early in October, 1940. The only other evidence introduced at the trial as to the value of the converted yarns at the time of their conversion was testimony by Mr. Gibson, based on a quotation of November 20, 1940 from the Habersham Mills, that the market price of such yarn on November 22, 1940 was 32½c per pound.

After consideration of all the evidence on this subject, we are of the opinion that the defendant has no reason to complain of the amount of the damages as awarded by the trial justice.

In view of the admitted facts of the case and the testimony which we have above described, we cannot properly find that the decision of the trial justice was not supported by the preponderance of the evidence. The exception to that decision should therefore be overruled.

As above stated, the only other exception relied on before us by the defendant was to the refusal of the trial justice to grant a motion by the defendant's counsel that the answer of the plaintiff's witness Gibson to question 356 addressed to him should be stricken out. This witness had, very shortly before, testified that on the occasion when he was at the mill of the Narragansett Company on October 26, 1940, and had brought back some of the Waterman Company's yarn, he had seen there, on beams, some 20/2 cotton yarn which had been shipped by the Habersham Mills.

He was then asked question 356, as follows: "And now, will you tell the Court how you know it to be Habersham yarn?" His answer was: "Because I was told so by Mr. Armand Heroux." The man referred to in this answer was an employee of the Narragansett Company and was not employed by the defendant; and it may well be that the answer should have been stricken out on the motion of the defendant's counsel.

But later in the trial it was clearly proved, by uncontradicted and unimpeached testimony, that at the time of Gibson's visit to the plant of the Narragansett Company there were at that plant nine beams on which were wound the yarn from nine of the ball warps shipped by the Habersham Company to the Narragansett Company on account of the plaintiff.

Therefore, we find that the refusal of the trial justice to grant the motion of the defendant's counsel, though it may have been erroneous, was not prejudicial to the defendant and that the exception should be overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Sisson, Fletcher & Worrell, Fred Brosco,* for plaintiff.
*Max Winograd, Marshall Marcus,* for defendant.