EDWARD N. WHITE AND ROBERT SEMINARA, TRADING UNDER THE NAME AND STYLE OF HOLIDAY CASUALS, PLAINTIFFS-RESPONDENTS, v. ABRAHAM GOLDBERG, TRADING AS A. GOLDBERG & SONS, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued January 29, 1951—Decided February 28, 1951.

124

Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.

*Mr. Archibald Kreiger* argued the cause for defendant-appellant (*Mr. George Dimond,* attorney).

*Mr. Sydney I. Turtz* argued the cause for plaintiffs-respondents (*Messrs. Cohen & Turtz,* attorneys).

The opinion of the court was delivered by

McGEEHAN, S. J. A. D.   The plaintiffs sued the defendant for the value of certain goods allegedly owned by the plaintiffs and converted by the defendant.   At the close of the case, the trial judge granted the plaintiffs' motion for judgment on the issue of liability and submitted to the jury only the issue of the amount of damages.   The defendant appeals from the judgment in favor of the plaintiffs for $4,720.98 entered in the County Court, Law Division.

The defendant argues that the court erred in granting the motion for judgment on the issue of liability under three points:  (1) the evidence was in conflict as to the identity of the goods, (2) the existence of the facts claimed by plaintiffs to support ownership in them was not admitted by the defendant, and (3) the failure of Carlin Textile Mills, Inc., the bailor, "to reveal its bankruptcy on April 5, 1949, and the omission to list plaintiffs or defendant as debtor or creditor in its bankruptcy schedules cast a cloud of doubt and fraud over the trustworthiness of the entire case and raised disputed

fact questions of title and ownership of plaintiffs in the goods."

The plaintiffs are manufacturers of play shoes and slippers and customarily purchase for their needs about six months in advance. In 1948 they entered into an agreement with Carlin Textile Mills, Inc. (hereinafter referred to as Carlin), under which the plaintiffs were to furnish Carlin with certain rayon yarn for weaving into satin cloth and Carlin was to do the weaving. Carlin had an office in New York City and a weaving mill in New Bedford, Massachusetts. Pursuant to the agreement, the plaintiffs purchased 17 cases of 150-denier Italian rayon yarn from Harvart Plush Co., Inc., to be shipped to Carlin at its weaving plant in New Bedford. By invoice dated September 8, 1948, Harvart billed the plaintiffs for the yarn and the plaintiffs paid by check dated September 22, 1948. Carlin received this yarn in September, 1948. During the same month, Carlin made an agreement with the defendant under which Carlin was to furnish rayon yarn for weaving into satin cloth and the defendant was to do the weaving. Thereafter, the defendant received a truck shipment from Carlin of 17 cases of 150-denier Italian rayon yarn for weaving into satin cloth. This shipment was accompanied by a memorandum bill of lading dated October 7, 1948, showing that the trucker received the goods from Adar Company, 39 West 32nd Street, New York, N. Y., consigned to Jackson Winding Co., 8 Morris Street, Paterson, N. J., nominee of the defendant; and Jackson's bookkeeper had marked thereon "a/c Carlin for Goldberg." Adar Company was not identified. On April 1, 1949, the defendant had completed the weaving of this yarn into 6,842 yards of satin cloth.

In the latter part of March, 1949, the plaintiffs demanded their satin cloth from Carlin and in the early part of April, 1949, they were told, for the first time, by Carlin that Carlin had sent the plaintiffs' yarn to the defendant for weaving and that defendant had the plaintiffs' satin cloth. In April, 1949, the defendant shipped 3,698 yards of this satin cloth to the plaintiffs, the shipment having been made, according to Carlin's testimony, on its representation to the defendant that

the plaintiffs were the owners of the cloth, but, according to defendant's testimony, merely on Carlin's instructions, without knowledge at the time of plaintiffs' claim of ownership. Plaintiffs, claiming ownership and right to possession, made demand on defendant for the balance of this satin cloth, offering to pay all charges of defendant in connection therewith; the defendant, raising no question of plaintiffs' ownership and right to possession, refused to deliver the balance of this satin cloth unless the plaintiffs would also pay to the defendant the amount of defendant's charges against Carlin for weaving some 18,000 yards of taffeta cloth owned by Carlin; the plaintiffs refused to pay the charges for weaving the taffeta cloth; and, on October 4, 1949, the defendant sold the balance of the satin cloth. Neither Carlin nor anyone else except the plaintiffs claimed ownership or right to possession of this satin cloth.

Here the defendant was a bailee, Carlin the bailor, and the plaintiffs a third party who, claiming to be owner and entitled to immediate possession, demanded the goods from the bailee. A bailee may make a qualified refusal to deliver the goods to a third person under circumstances which would lead a reasonable man to believe that such third person is not entitled to the possession of the goods. *Restatement, Torts,* § 240, *comment c; Wykoff v. Stevenson, 46 N. J. L. 326 (Sup. Ct. 1884)* ; *Prosser on Torts,* § 15 (1941). However, the privilege of the bailee to make a qualified refusal to surrender the goods on demand to the person entitled to its immediate possession must be exercised for the purpose for which the privilege is given. *Restatement, Torts,* § 241, *comment a.* A qualified refusal by the bailee to surrender the goods to the demandant, based upon reasons which do not justify it, makes the bailee liable although the circumstances are such as to afford proper grounds for some other qualification. *Restatement, Torts,* § 241, *comment b.* The bailee's privilege to make a qualified refusal for the purpose of affording him a reasonable opportunity to inquire into the right of the demandant exists only if (a) the bailee in good faith makes the refusal to surrender the goods for such purpose,

and (b) such purpose in making the refusal is communicated to the demandant, unless the circumstances of the case justify the failure to do so. *Restatement, Torts*, § 241.

■ This defendant-bailee never based his refusal to deliver the goods to the plaintiffs-demandants on the ground that he questioned the plaintiffs' right of ownership or right to immediate possession and, of course, no such purpose in making his refusal was communicated to plaintiffs. The defendant refused to deliver unless the plaintiffs-demandants would pay the defendant-bailee's claim against Carlin for weaving the taffeta cloth owned by Carlin, and refusal to deliver on this ground was wholly unjustified.

■ The plaintiffs' ownership and right to possession was established by uncontradicted testimony and writings in evidence, and there was neither evidence of ownership or right of possession in anyone else nor a claim thereof. *Cf. G. H. Waterman & Co. v. Dwares*, 27 A. 2d 327 (*Sup. Ct. R. I.* 1942). Benjamin Goldfarb, who acted throughout for Carlin, testified without contradiction that after Carlin received the plaintiffs' yarn, it found that it was not feasible to weave the yarn on its own machines and arranged to have the defendant weave the yarn; that it sent the plaintiffs' yarn to the defendant by truck; and that Carlin never sent any other like yarn to the defendant. The defendant received by truck from Carlin yarn of the same type and weight as the plaintiffs' yarn. After the plaintiffs' demand for the goods, a letter dated August 31, 1949, confirming the demand, was received by the defendant, in which it was stated: "The goods consists of 6,842 yards of satin which, I understand, pursuant to a telephone conversation I had with Mr. Goldberg of your company, is earmarked and set aside in your place of business as belonging to Holiday Casuals." The defendant never answered this letter but proceeded to sell the goods.

There is no merit in defendant's second point. Not only did plaintiffs prove their ownership and right to possession by uncontradicted evidence, both oral and written, but there was neither claim nor evidence to support any claim of ownership or right to possession in anyone else.

There was testimony by Goldfarb that Carlin filed a petition in bankruptcy on April 5, 1949; that all Carlin's records were turned over to the receiver in bankruptcy; and that neither the plaintiffs nor the defendant was listed as a debtor or creditor. We fail to see how this can be of any aid to the defendant, since neither the receiver nor anyone for him made any claim of ownership or right to possession.

The judgment is affirmed.